IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HomeVestors of America, Inc., | § |
| | § |
| Plaintiff, | §  Civil Action No. _____ |
| | § |
| v. | § |
| | § |
| Sarah Jo Perez, individually, and | § |
| Hector Alfonso Perez, individually, | § |
| | § |
| Defendants. | § |
| | § |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff HomeVestors of America, Inc. ("HomeVestors") files this Original Complaint asserting claims against Defendants Sarah Jo Perez ("Mrs. Perez") and Hector Perez ("Mr. Perez") (collectively, "Defendants") for trademark infringement in violation of 15 U.S.C. § 1114 (Section 32 of the Lanham Act) and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A) (Section 43(a)(1)(A) of the Lanham Act), as well as breach of contract, trademark infringement, unfair competition and unjust enrichment under Texas law.

HomeVestors seeks: (1) actual, treble, and exemplary damages from Defendants; (2) a preliminary injunction, and after trial, a permanent injunction; and (3) HomeVestors' attorney's fees and costs of court.

**I. PARTIES**

1.     HomeVestors is a Delaware corporation with its principal place of business at 6500 Greenville Avenue, Suite 400, Dallas, Texas 75206.

2. On information and belief, Mrs. Perez is an individual residing at 327 Remington Bend Ct., Houston, TX 77073. On information and belief, Mrs. Perez is a proprietor of a real estate business in the Harris County area with an Assumed Name of "Sell Your House Any Condition" registered in Harris County, which is used in connection with real estate services. On information and belief, Mrs. Perez is one of the moving forces behind the infringing activities complained of herein and has an interest in the financial outcome of her real estate business and its activities.

3. On information and belief, Mr. Perez is an individual residing at 327 Remington Bend Ct., Houston, TX 77073. On information and belief, Mr. Perez is a proprietor of a real estate business in the Harris County area and is one of the moving forces behind the infringing activities complained of herein and has an interest in the financial outcome of his real estate business and its activities.

4. On information and belief, Mrs. Perez and/or Mr. Perez are the registrants of the domain <sellyourhouseanycondition.com>, at which location Mrs. Perez and/or Mr. Perez operate sellyourhouseanycondition.com (the "Website"). The domain and the Website are available to and directed at residents of this District.

## II. JURISDICTION AND VENUE

5. The Court has subject-matter jurisdiction over the Lanham Act claims in this action under 28 U.S.C. §§ 1331 and 1338. The Court has supplemental jurisdiction over the Texas state law claims in this action under 28 U.S.C. § 1367 because these claims arise out of the same transactions and occurrences giving rise to the federal Lanham Act claims and are so related

to those claims as to be a part of the same case or controversy.  The Court has original jurisdiction over HomeVestors' unfair competition claim under 28 U.S.C. § 1338(b).

6.  The Court has personal jurisdiction over Defendants because Defendants' contacts with the State of Texas and this District are so continuous and systematic as to render them essentially at home in the State of Texas and this District.  On information and belief, Mrs. Perez is a citizen, resident, and is domiciled in the State of Texas.  On information and belief, Mr. Perez is a citizen, resident, and is domiciled in the State of Texas.  The Court also has personal jurisdiction over Defendants because the acts that are the subject of HomeVestors' claims, including trademark infringement and unfair competition, were committed by Defendants, in part, in the State of Texas in this District.  Defendants conduct business primarily through the Website, which improperly uses HomeVestors' registered trademarks.  The Website is an active site allowing customers to contact Defendants and submit information about homes the customers wish to sell.  Defendants are making commercial use of HomeVestors' registered trademark in Texas and this District.  As a result, Defendants are doing business in this District and committing acts of infringement, unfair competition, and other wrongs in this District.

7.  Under 28 U.S.C. § 1391(b)(1), venue is proper in this District because Defendants reside in this District and are residents of Texas.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims of this action occurred in this District.

### III.  FACTUAL BACKGROUND

**A.  HomeVestors' business.**

8.  HomeVestors began franchising its business in 1996.  HomeVestors has over 600 franchisees across 44 states that operate under strict codes and systems to ensure high ethical

standards and responsible business practices. Over the years, HomeVestors and its franchisees have bought more than 60,000 houses.

9. HomeVestors is known as the WE BUY UGLY HOUSES® people and is the number one buyer of houses in the United States. HomeVestors franchisees buy homes that are difficult to sell and pay cash to owners in challenging situations. HomeVestors franchisees rehabilitate the houses and then sell or lease the homes. This process improves neighborhood aesthetics and provides opportunities for first-time homebuyers, other homebuyers, and renters.

10. HomeVestors offers low-cost franchising opportunities to investors seeking to enter the business. Its unique business model includes a proprietary software system used in evaluating the potential value of single-family homes for purchase and repair. HomeVestors and its franchisees also employ a mass advertising campaign based on high-impact billboards, nationwide television commercials, and widespread Internet advertising that has achieved nearly universal market awareness for HomeVestors' trademark portfolio, which is discussed in detail below. HomeVestors also utilizes a direct-selling program that assists franchisees in identifying buyers or investors who may already have a vested interest in improving the relevant neighborhoods.

11. HomeVestors has received numerous honors and awards. In 2015, HomeVestors was recognized as the 19th fastest growing franchise by Entrepreneur Magazine. In 2016, HomeVestors was recognized as number 91 in the Franchise 500 by Entrepreneur Magazine. Furthermore, in 2015, SMU Cox School of Business named HomeVestors as number 28 in the "Dallas 100" fastest-growing private companies based in Dallas. HomeVestors was the only home buying franchise on each of those lists. Also in 2015, and for the tenth consecutive year, HomeVestors was named to Franchise Business Review's "Top 50 Franchises," a distinction

awarded to franchisors with the highest level of franchisee satisfaction. HomeVestors has built substantial goodwill in its name and business practices among both consumers and its franchisees.

**B.     HomeVestors owns substantial trademark rights through its significant use in commerce of its trademarks.**

12.     HomeVestors possesses extensive valuable rights in its intellectual property, including a family of U.S. trademarks listed in the chart attached hereto as Exhibit A ("HomeVestors' Registered Marks").

13.     HomeVestors owns and has used the Ugly Houses Marks (defined below) since at least as early as 2000 and has built substantial brand-name recognition through the use of these marks. Through continuous and exclusive use in commerce, the HomeVestors Registered Marks have achieved incontestable status. Specifically, the following marks have become widely recognized in the industry, and HomeVestors has built significant goodwill in those marks: WE BUY UGLY HOUSES® & Design (Reg. No. 2,761,385); WE BUY UGLY HOUSES® (Reg. No. 3,099,814); COMPRAMOS CASAS FEAS® (Reg. No. 2,988,337); COMPRAMOS CASAS FEAS® (Reg. No. 2,982,363); WE BUY UGLY HOUSES® (Reg. No. 2,999,705); WE BUY UGLY HOUSES AND MAKE THEM NICE AGAIN® & Design (Reg. No. 2,827,136); UGLY'S OK® Stylized (Reg. NO. 2,797,429); UGLY'S OK® (Reg. No. 2,794,480); WE SELL LUVLY HOUSES.COM® (Reg. No. 3,658,442); THE UGLIEST HOUSE OF THE YEAR® (Reg. No. 3,641,362); THE UGLIEST HOUSE OF THE YEAR® & Design (Reg. No. 3,641,361); THE GOOD, THE BAD AND THE UGLY® (Reg. No. 3,350,752); WE BUY THE GOOD, THE BAD AND THE UGLY® (Reg. No. 3,307,918); SOLUTIONS FOR UGLY SITUATIONS® (Reg. No. 3,188,593); SOLUTIONS FOR UGLY SITUATIONS® (Reg. No. 3,185,390); UG BUYS UGLY HOUSES® (Reg. No. 2,999,978); and UG BUYS UGLY HOUSES® (Reg. No. 2,935,916)

(Registration Nos. 2,761,385; 3,099,814; 2,988,337; 2,982,363; 2,999,705; and 2,827,136 are collectively referred to as the "Ugly Houses Marks").

14. Over the years, HomeVestors has spent significant amounts of time and resources in developing its brand and maintaining the goodwill it has built in its trademarks. HomeVestors and its network of franchisees have spent over $100 million on advertising over the course of the past 10 years, which includes advertising on the Internet, radio, television, magazines, and billboards seen throughout the country. The HomeVestors brand is readily and widely recognized in the industry and among the general public.

C. **Defendants operate the Website using the Ugly Houses Marks, thereby committing acts of infringement and unfair competition.**

15. On information and belief, Defendants control and operate the Website. The Website is a direct competitor with HomeVestors and its franchisees. The Website advertises the buying of houses that are difficult to sell. Such advertising is directed to Texas residents, including those located in this District.

16. The Website uses the Ugly Houses Marks in website text and hidden within source code meta tags. This unauthorized use of the Ugly Houses Marks results in acts of infringement and unfair competition.

17. On or about May 12, 2013, the Website contained the phrases "We Buy Ugly ___ Houses," "We Buy Ugly ___ Homes," "Buy Ugly Houses," and "Ugly Houses" on the face of the Website and/or within source code of the Website.[1]

---

[1] *See* Exhibit B, a true and correct copy of printouts of Website pages, source code and a printout of search results showing a listing for the Website.

18.   On May 29, 2013, counsel for HomeVestors sent a letter to Domain Privacy Service listed as registrant in the WHOIS records for the domain, requesting valid contact information for the registrant of the domain to communicate regarding the infringing use within the domain Website.[2]

19.   On July 1, 2013, counsel for HomeVestors received an email from Blue Host Legal Department indicating the registrant of the domain was notified of the violations and required to remove the infringing content within forty-eight hours.[3]

20.   On or about July 5, 2013, the Website contained the phrases "We Buy Ugly ___ Homes" and "Ugly Houses" on the face of the Website.[4]

21.   Between July 6, 2013 and July 26, 2013, communications were made between counsel for HomeVestors and Mr. Perez regarding removal of Defendants' infringing use of the Ugly Houses Marks from the Website.[5]

22.   On July 29, 2013, Defendants agreed to cease use of the Ugly Houses Marks, and specifically the phrase "Ugly Houses," and entered into an agreement signed by Mr. Perez, dated July 29, 2013, indicating such agreement, including an agreement not to use "Ugly Houses" or the Ugly Houses Marks in the future.[6]

23.   On or about November 20, 2015, the Website contained the phrases "We Buy Ugly Houses" and "Ugly Houses" on the face of the Website. The phrase "We Buy Ugly Houses"

---

[2] *See* Exhibit C a true and correct copy of the letter sent to Domain Privacy Service from counsel for HomeVestors.
[3] *See* Exhibit D, a true and correct copy of the email counsel for HomeVestors received from Blue Host Legal Department.
[4] *See* Exhibit E, a true and correct copy of print outs of web pages of the Website and their source code.
[5] *See* Exhibit F, a true and correct copy of email communications dated in July 2013 between counsel for HomeVestors with Defendants.
[6] *See* Exhibit G, a true a correct copy of the email and attached signed agreement counsel for HomeVestors received from Mr. Perez.

was used in the title section of a web page. The phrases "we-buy-ugly-houses" and "sell-my-ugly-house" were used in URL extensions of the domain. The phrase "We Buy Ugly Houses" was used in tags within the Website and source code. The phrase "We Buy Ugly Houston Houses" was used within source code of embedded images on the Website. A reference to HomeVestors and a link to HomeVestors' <webuyuglyhouses.com> domain website were included on a web page of the Website. The phrase "Ugly House(s)" was used in social media accounts in advertising for the Website.[7]

24. On December 3, 2015, Counsel for HomeVestors sent a letter to Mr. Perez's email address demanding Defendants stop the infringing use of the phrase "Ugly Houses" and the Ugly Houses Marks in breach of Defendants' contractual obligations and agreement not to use the phrase "Ugly Houses" and the Ugly Houses Marks, giving Defendants until December 8, 2015 to rectify the infringing use.[8]

25. On or about January 6, 2016, the Website contained the phrase "We Buy Ugly Home" with a reference to HomeVestors and a link to HomeVestors' <webuyuglyhouses.com> domain website. The phrase "We Buy Ugly Houston Houses" was used within the source code of the Website and within the source code of an embedded image on the Website. The phrase "Ugly House(s)" was used repeatedly throughout the text on the face of the Website. The phrase "Ugly House(s)" was used in a title of a web page within the source code at <sellhouseanycondition.wordpress.com> and within URL extensions of that domain. The phrases "We Buy Ugly Houses" and "Ugly House(s)" were used in an ad directing traffic to the Website.

---

[7] *See* Exhibit H, a true and correct copy of print outs of web pages of the Website, source code of the Website and print outs of social media pages.
[8] *See* Exhibit I, a true and correct copy of the letter dated December 3, 2015 from counsel for HomeVestors to Defendants.

The phrases "We Buy #Ugly #Houses" and "Ugly House(s)" were used in social media accounts as advertisements for the Website.[9]

26. On information and belief, Defendants' only modifications to the Website since the communications on December 3, 2015 included a replacement of the word "House(s)" to "Homes" and infringing use remains within the Website, social media directed at the Website and ads for the Website. As a result, HomeVestors was forced to escalate this matter to litigation.

**D. Unless Defendants are enjoined, HomeVestors will suffer irreparable harm for which it has no remedy at law.**

27. Unless Defendants are enjoined, HomeVestors will suffer irreparable harm. Defendants will continue to trade on the goodwill HomeVestors has built in its marks. Defendants will profit unfairly from their trademark infringement, unfair competition, and other wrongs. Defendants will continue to use the trademark terms in which HomeVestors has built substantial goodwill within keyword advertisements on search engine websites. Such keyword advertising diverts business that otherwise would belong to HomeVestors and causes initial interest confusion. Moreover, HomeVestors has no ability to control the quality of the services provided by Defendants in conjunction with the Ugly Houses Marks, and therefore, is at risk of irreparable harm for which there is no remedy at law and for which money damages cannot repair.

28. By way of example, if customers of Defendants experience inferior services, they will likely mistakenly attribute that bad experience to HomeVestors and its franchisees due to Defendants' adoption of the same marks. This is heightened by Defendants' strategy to provide the same or similar services to the same customer base using the same advertising channels in

---

[9] *See* Exhibit J, a true and correct copy of print outs of web pages of the Website, source code, social media, ads and a print out of a site search of the website showing cached results with use of the phrase "We Buy Ugly Houses" within the Website.

connection with the same marks. As established above, these actions are taken intentionally by Defendants as part of a scheme to trade on the goodwill built by HomeVestors through its investment of time, efforts, and advertising in the HomeVestors Registered Marks. Defendants are intentionally trading off the goodwill HomeVestors has built up in its marks over years of use and promotion.

## IV. Claims

**Count 1 – Trademark Infringement Under 15 U.S.C. § 1114 (Section 32 of the Lanham Act)**

29. HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

30. Defendants' acts committed in the course of Internet commerce constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, of the Ugly Houses Marks. As established by the registration for the marks, the marks are protectable and enforceable against Defendants, HomeVestors is the owner of the marks, and HomeVestors is the senior user of the marks. Moreover, Defendants' actions have caused a likelihood of confusion and damage to HomeVestors. In particular, through the infringing use of the Ugly Houses Marks, Defendants are harming HomeVestors and diverting sales that would otherwise go to HomeVestors. Defendants' use of the Ugly Houses Marks is likely to cause confusion and mistake as to the source of Defendants' services.

31. In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Defendants should be primarily and, upon hearing, permanently enjoined from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles,

banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

32. Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), HomeVestors is entitled to recover from Defendants: (i) Defendants' profits, (ii) the damages sustained by HomeVestors, and (iii) the costs of this action. Due to the knowing, intentional, and purposeful nature of Defendants' conduct, HomeVestors seeks treble the amount of its actual damages. Due to the exceptional nature of this case, HomeVestors also seeks its reasonable attorney's fees.

**Count 2 – Unfair Competition Under 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act)**

33. HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth at herein.

34. Defendants' acts committed in the course of interstate commerce constitute materially false and misleading misrepresentations of fact with respect to the origin of Defendants' services, and the affiliation, sponsorship, and approval of Defendants' services in violation of Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

35. In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Defendants should be preliminarily and, upon hearing, permanently enjoined from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

36. Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), HomeVestors is entitled to recover from Defendants: (i) Defendants' profits, (ii) the damages sustained by HomeVestors, and (iii) the costs of this action. Due to the knowing, intentional, and purposeful nature of Defendants' conduct, HomeVestors seeks treble the amount of its damages. Due to the exceptional nature of this case, HomeVestors seeks its reasonable attorney's fees.

**Count 3 – Trademark Infringement in Violation of Texas Law**

37. HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

38. As established above, HomeVestors is the senior user of its marks and enjoys priority over Defendants. HomeVestors' substantial use of these marks in commerce has resulted in the marks being protectable and enforceable. Defendants' use in commerce of the Ugly Houses Marks and confusingly similar marks in connection with competing services constitute infringement of HomeVestors' common-law rights to its marks. Defendants' use of the marks is likely to cause confusion or mistake as to the source of Defendants' services.

39. In accordance with Texas law, Defendants should be preliminarily and permanently enjoined, upon hearing, from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark or service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword bidding or advertising, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

**Count 4 – Unfair Competition under Texas Law**

40. HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

41. Defendants have engaged in commerce in the State of Texas and this judicial district by marketing, offering to sell, and selling Defendants' competing services. Defendants have advertised their services on their active website. Defendants have competed unfairly in violation of Texas law by misrepresenting or misleading the public to believe that their services are sponsored by, approved by, affiliated with, associated with, or originated by HomeVestors.

42. In accordance with Texas law, Defendants should be preliminarily and permanently enjoined, upon hearing, from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark or service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

43. HomeVestors has been damaged by Defendants' actions. Under Texas law, HomeVestors is entitled to recover its actual damages caused by Defendants' unfair competition and exemplary damages due to the knowing, willful, and intentional nature of Defendants' actions.

**Count 5 – Unjust Enrichment Under Texas Law**

44. HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

45. As set forth above, Defendants have used the Ugly Houses Marks and HomeVestors' goodwill as an integral step of Defendants' sales of their services. On information and belief, Defendants have received a direct pecuniary benefit from these unlawful acts. Defendants are therefore unjustly enriched to HomeVestors' detriment. As a result, HomeVestors is entitled to recover its actual damages caused by Defendants' unjust enrichment.

**Count 6 – Breach of Contract**

46. HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

47. As set forth above, Defendants have breached the contractual agreement dated July 29, 2013 and signed by Defendant Mr. Perez. As a result, HomeVestors is entitled to recover attorney's fees, in addition to the amount of valid claims and costs, caused by Defendants' breach of contract pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code.

48. All conditions precedent for this claim have been met.

**V. APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION**

49. HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

50. On information and belief, Defendants, unless enjoined, will continue to misrepresent to or mislead the public into believing that their services are sponsored by, approved by, affiliated with, associated with, or originated by HomeVestors and infringe the Ugly Houses Marks by using those marks or confusingly similar variations thereof to identify Defendants' competing services.

51. All of these acts violate the Lanham Act and Texas law.

52. These actions entitle HomeVestors to a preliminary injunction and, upon hearing, permanent injunction enjoining Defendants and their officers, agents, servants, employees, franchisees, and attorneys, and all those persons in active concert or in participation with them from:

(i) Representing Defendants' services are in any way sponsored by, approved by, affiliated with, or originated by HomeVestors;

(ii) Representing Defendants are HomeVestors;

(iii) Using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, or otherwise, to market, advertise, or identify Defendant's services; and

(iv) Otherwise competing unfairly with HomeVestors or injuring its business reputation in any manner.

53. For these actions, there is no adequate remedy at law. Further, HomeVestors is substantially likely to prevail on the merits of these claims. The injury to HomeVestors greatly outweighs any injury to Defendants that the requested injunction may cause. The balance of hardships tips strongly in favor of HomeVestors. Finally, the injunction will not disserve the public interest. Therefore, HomeVestors is entitled to preliminary and permanent injunctive relief against Defendants.

## VI. REQUEST FOR RELIEF

For the foregoing reasons, HomeVestors respectfully requests the Court to:

1. Award HomeVestors its actual, treble, and exemplary damages;

2. In accordance with Texas law and 15 U.S.C. § 1116, issue a preliminary and permanent injunction enjoining Defendants and their officers, agents, servants, employees, franchisees, if any, and attorneys, and all those persons in active concert or participation with Defendants from the acts described in this Complaint;

3. Order Defendants and their officers, agents, servants, employees, franchisees, and all those persons in active concert or participation with them, to identify all third parties to whom Defendants have represented themselves to be the organization behind the Ugly Houses Marks or somehow sponsored by, approved by, affiliated with, or associated with HomeVestors and all third parties to whom Defendants have distributed any type of materials incorporating the Ugly Houses Marks;

4. Order Defendants and their officers, agents, servants, employees, franchisees, if any, and attorneys, and all those persons in active concert or participation with them, to identify all other websites containing the Ugly Houses Marks;

5. Order Defendants to provide an accounting of all sales, revenues, and profits related to Defendants' services that infringe the Ugly Houses Marks and that are falsely designated as being sponsored by, approved by, affiliated with, or associated with HomeVestors;

6. In accordance with 15 U.S.C. § 1118, order all materials in Defendants' possession or control bearing the Ugly Houses Marks be surrendered for destruction;

7. In accordance with the Texas Civil Practice and Remedies Code 38.001, award HomeVestors its reasonable attorneys fees, costs, and expenses caused by Defendants' breach of contract;

8. In accordance with Texas law and 15 U.S.C. §§ 1117(a) and (d), award HomeVestors all of Defendants' profits from the aforesaid acts of unjust enrichment, trademark infringement, and unfair competition;

9. In accordance with Texas law and 15 U.S.C. § 1117(a), find this case to be exceptional in HomeVestors' favor and award HomeVestors its reasonable attorney's fees, costs, and expenses of this action;

10. Award HomeVestors its costs and pre-judgment and post-judgment interest at the maximum allowable interest rate; and

11. Grant HomeVestors such other relief, at law or in equity, to which it is justly entitled.

Dated: February 4, 2016

Respectfully submitted,

**KLEMCHUK LLP**

*/s/ Aaron D. Davidson*
Aaron D. Davidson
Aaron.Davidson@klemchuk.com
Texas State Bar No. 24007080
Darin M. Klemchuk
Darin.Klemchuk@klemchuk.com
Texas State Bar No. 24002418
Corey Weinstein
Corey.Weinstein@klemchuk.com
Texas State Bar No. 24037685

8150 N. Central Expressway, 10th Floor
Dallas, TX 75206
P.  214.367.6000
F.  214.367.6001

**ATTORNEYS FOR PLAINTIFF
HOMEVESTORS OF AMERICA, INC.**